Cite as 2020 Ark. App. 222

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-611

|  |  |
|---|---|
| COLONEL GLENN HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC., D/B/A PROFESSIONAL NURSING AND REHABILITATION SERVICES; ARGENTA HEALTH SERVICES, LLC; AND MICHAEL S. MORTON                          APPELLANTS<br><br>V.<br><br>TERESA JOANNE ALDRICH, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JEFFREY WATTON, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JEFFREY WATTON<br><br>APPELLEES | **Opinion Delivered** April 8, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-18-8262]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br><br><br><br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Teresa Joanne Aldrich, as special administrator of the estate of Jeffrey Watton, deceased, and on behalf of the wrongful-death beneficiaries of Jeffrey, sued Colonel Glenn Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (collectively "Colonel Glenn Health") for negligence, medical malpractice, and violations of the Arkansas Long-Term Care Residents' Rights Act for injuries Jeffrey sustained while a resident at Colonel Glenn Health and Rehab, a Little Rock nursing

home. Colonel Glenn Health appeals from an order entered by the Pulaski County Circuit Court denying its motion to compel arbitration.[1] We affirm.

Jeffrey was admitted into Colonel Glenn Health and Rehab on May 5, 2017. As part of his admission, two documents were executed: an admission agreement and an arbitration agreement. The introductory paragraph of the arbitration agreement states that the agreement is entered into by Colonel Glenn Health and Rehab as the "Facility," Jeffrey as the "Resident," and Mary Joanne Watton[2] as "Resident's 'Responsible Party.'" "Responsible Party" is defined in both the admission agreement and the arbitration agreement as

> the Resident's legal guardian, if one has been appointed, the Resident's attorney-in-fact, if the Resident has executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for the Resident's health, care and maintenance.

Jeffrey did not sign either the admission agreement or the arbitration agreement. Both agreements are signed by Mary on lines designated "Responsible Party." Below her signature is a line that is designated "Responsible Party's Relationship to Resident," and there Mary wrote "wife." There is also a section on the signature page of the arbitration agreement that states:

> _____ (Check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation has been provided to the Facility and is attached.

There is no check mark here. It is undisputed that Mary is not Jeffrey's legal guardian or attorney-in-fact.

---

[1]An order denying a motion to compel arbitration is an appealable order. Ark. R. App. P.–Civ. 2(a)(12) (2019).

[2]Mary Joanne Watton is Jeffrey's wife.

2

The arbitration agreement waives the right to trial by judge or jury and states that

> any and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement, or any service or health care provided by the Facility to the Resident, that would constitute a cause of action in a court of law . . . shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process.
>
> . . . .
>
> THE PARTIES FURTHER ACKNOWLEDGE THAT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AND ARE INSTEAD ACCEPTING THE USE OF ARBITRATION.

On December 3, 2018, Teresa[3] filed a complaint against Colonel Glenn Health for negligence, medical malpractice, and violations of the Residents' Rights Act. The complaint alleges that during Jeffrey's residency at Colonel Glenn Health and Rehab, which began on May 5, 2017, he sustained a fall, a right hip fracture, a shoulder contusion, pain, and unnecessary suffering. The complaint alleges that Jeffrey was hospitalized on May 18 and died on May 25.

Colonel Glenn Health timely answered and affirmatively stated that the dispute is governed by the arbitration agreement. On March 13, 2019, Colonel Glenn Health moved to compel arbitration of all claims, alleging that Mary signed the arbitration agreement in her individual capacity as the "Responsible Party" and that Jeffrey is bound to the agreement under the third-party-beneficiary doctrine. Colonel Glenn Health also requested, pursuant to Arkansas Rule of Civil Procedure 52(a)(1), that the circuit court issue findings of fact and conclusions of law. On March 25, Teresa filed a response to the motion to compel, claiming

---

[3]Teresa is Jeffrey's daughter.

that Mary did not have authority to act on behalf of Jeffrey and that the third-party-beneficiary doctrine did not apply. Additionally, Teresa argued that the arbitration agreement is unconscionable.

On April 5, the circuit court entered an order denying Colonel Glenn Health's motion to compel arbitration without explaining its reasoning. Colonel Glenn Health, in an April 9 letter to the circuit court, repeated its request for findings of fact and conclusions of law. On April 16, the circuit court entered an order denying Colonel Glenn Health's second request. On May 3, Colonel Glenn Health filed a timely notice of appeal from the April 5 order. The notice of appeal does not designate the April 16 order.

Colonel Glenn Health's first point on appeal is that the circuit court erred in refusing to issue findings of fact and conclusions of law in its order denying the motion to compel arbitration as required under Arkansas Civil Rule of Procedure 52(a)(1). Teresa argues that this argument is not preserved for appeal because Colonel Glenn Health failed to state in its May 3 notice of appeal that an appeal was being taken from the April 16 order, and although the notice states that an appeal is being taken from the April 5 order, the notice does not expressly state that an appeal is being taken from the circuit court's failure to make findings of fact and conclusions of law.

A notice of appeal should designate the judgment, decree, order or part thereof appealed from. Ark. R. App. P.–Civ. 3(e)(ii) (2019). It must be judged by what it recites and not what it was intended to recite, and it must state the order appealed from with specificity as orders not mentioned in it are not properly before the court. *City of Jacksonville v. Nixon*, 2014 Ark. App. 485, at 3, 442 S.W.3d 906, 910.

4

Colonel Glenn Health did not state in the notice of appeal that an appeal was being taken from the April 16 order. However, this omission is not fatal because Colonel Glenn Health did state in the notice that it was appealing from the April 5 order, and that order failed to include findings of fact and conclusions of law despite Colonel Glenn Health's request. Accordingly, the Rule 52(a)(1) issue is preserved for appeal.

Rule 52(a)(1) of the Arkansas Rules of Civil Procedure provides:

> If requested by a party at any time prior to the entry of judgment, in all contested actions tried on the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered . . . . Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules.

Ark. R. Civ. P. 52(a)(1) (2019). Colonel Glenn Health contends that the order denying the motion to compel arbitration is a judgment pursuant to Arkansas Rule of Civil Procedure 54(a), which defines a judgment as a "decree and any order from which an appeal lies." Ark. R. Civ. P. 54(a). Because an order denying a motion to compel arbitration is an appealable order, Colonel Glenn Health asserts that it is a judgment as defined in Rule 54(a); therefore, findings of fact and conclusions of law are required under Rule 52(a)(1). We disagree.

Findings of fact and conclusions of law under Rule 52(a)(1) apply only to the entry of judgments in "contested actions tried upon the facts without a jury." In the case at bar, there is no judgment in a contested action tried upon the facts without a jury. Here, the circuit court ruled as a matter of law on a motion to compel arbitration. Therefore, the order denying the motion to compel arbitration is not a judgment as contemplated by Rule 52.

Moreover, our court has recently ruled that findings of fact and conclusions of law under Rule 52(a)(1) are not required for decisions on motions to compel arbitration. In *Hickory*

5

*Heights Health & Rehabilitation, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286, an appeal was taken from an order summarily denying a motion to compel arbitration despite the appellant's request for findings of fact and conclusions of law pursuant to Rule 52(a)(1). Our court stated:

> "Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Ark. R. Civ. P. 52(a). Although it may be the better practice for the circuit court to make findings on motions, the court's failure to do so is not error. Unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment.

*Cook*, 2018 Ark. App. 409, at 4 n.2, 557 S.W.3d at 289 n.2 (internal citations omitted). In light of our holding in *Cook* and the language in Rule 52(a)(1), we affirm Colonel Glenn Health's first point on appeal.

We now address Colonel Glenn Health's second point on appeal—the denial of its motion to compel arbitration. We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Cook*, 2018 Ark. App. 409, at 5, 557 S.W.3d at 289. Arbitration is simply a matter of contract between parties. *Id.*, 557 S.W.3d at 290. Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.*, 557 S.W.3d at 290. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.*, 557 S.W.3d at 290. The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*, 557 S.W.3d at 290.

6

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? *Cook*, 2018 Ark. App. 409, at 5, 557 S.W.3d at 290. Second, if such an agreement exists, does the dispute fall within its scope? *Id.*, 557 S.W.3d at 290. In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *Id.*, 557 S.W.3d at 290. We are also guided by the legal principle that contractual agreements are construed against the drafter. *Id.*, 557 S.W.3d at 290.

At issue in this appeal is whether there is a valid agreement to arbitrate. It is undisputed that Jeffrey did not sign the arbitration agreement. Therefore, the salient issue is whether Jeffrey is bound by the arbitration agreement by virtue of Mary's having signed it as the "Responsible Party."

Colonel Glenn Health argues that the arbitration agreement is clear that there are three ways a "Responsible Party" can bind a resident to the arbitration agreement: the "Responsible Party" signs it as a legal guardian, as an attorney-in-fact, or in his or her individual capacity as someone who agrees to assist the nursing home in providing care for the resident. Colonel Glenn Health agrees that Mary did not sign the arbitration agreement as Jeffrey's legally authorized representative—he does not have power of attorney vested in Mary, and she is not his legal guardian. She wrote "wife" on the agreement where it asked about her relationship to Jeffrey. Therefore, argues Colonel Glenn Health, "the only reasonable conclusion based on the ordinary meaning of the language in the contract" is that Mary is a party to the arbitration agreement because she signed it in her individual capacity by agreeing to assist Colonel Glenn Health in providing care for Jeffrey. Colonel Glenn Health further contends that Jeffrey is

7

clearly the intended third-party beneficiary of Mary's arbitration agreement with Colonel Glenn Health; therefore, he is bound to it.

The validity of an arbitration agreement signed by a "Responsible Party" was the issue on appeal in *Cook*. When Mabel Cook was admitted into Hickory Heights nursing home, she did not sign the admission or the arbitration agreements. Ethel Cook signed both agreements as the "Responsible Party," and where the arbitration agreement asked Ethel what her relationship is to Mabel, Ethel wrote "daughter." *Id.* at 3, 557 S.W.3d at 289. Both the admission agreement and the arbitration agreement contained the same definition of "Responsible Party" as it is defined in the instant case.[4] *Id.*, 557 S.W.3d at 289. On the signature page of the arbitration agreement is the following language:

> ____ (Check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation has been provided to the Facility and is attached.

This space was left blank. *Id.*, 557 S.W.3d at 289. Mabel did not have a legal guardian, and Ethel was not Mabel's attorney-in-fact. *Id.* at 7, 557 S.W.3d at 291.

The circuit court in *Cook* summarily denied Hickory Heights's motion to compel arbitration. On appeal, Hickory Heights asserted, as does Colonel Glenn Health, that the circuit court erred because Ethel signed the arbitration agreement, as the "Responsible Party," in her individual capacity; Mabel was the intended beneficiary of the agreement; and Mabel was bound by the third-party-beneficiary doctrine to arbitrate her cause of action. *Id.* at 5, 557 S.W.3d at 289. We disagreed, holding that there was an ambiguity in the arbitration agreement on the issue of whether Ethel signed the document in an attempt to be a representative on

---

[4]The admission and arbitration agreements in *Cook* contain the same language as the agreements involved in the case at bar.

behalf of Mabel or whether Ethel signed in her individual capacity. *Id.* at 6–7, 557 S.W.3d at 289. With that ambiguity, we construed the agreement against the drafter and concluded that Ethel attempted to act in a representative capacity. Because Ethel lacked authority to act on behalf of Mabel, we held that there was no valid underlying contract to enforce against her, the third-party-beneficiary doctrine did not apply, and we affirmed the circuit court's refusal to compel arbitration. *Id.* at 10–11, 557 S.W.3d at 292; *see also Pine Hills Health & Rehab., LLC v. Talley*, 2018 Ark. App. 131, 546 S.W.3d 492 (holding that the third-party-beneficiary doctrine did not apply to bind the resident to the arbitration agreement because the resident's family member signed the agreement in a representative capacity—not in an individual capacity—without authority to do so; therefore; no valid arbitration agreement existed); *Broadway Health & Rehab., LLC v. Roberts*, 2017 Ark. App. 284, 524 S.W.3d 407 (same); *Progressive Eldercare Servs.-Chicot, Inc. v. Long*, 2014 Ark. App. 661, 449 S.W.3d 324 (same).

After the parties submitted their briefs in the present case, our supreme court handed down an opinion that cites *Cook* with approval and forecloses Colonel Glenn Health's appeal. In *Robinson Nursing & Rehabilitation Center, LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624, the supreme court was presented with the same issue regarding the validity of arbitration agreements executed by a "Responsible Party." The relevant contract language and facts in *Phillips* are nearly identical to the contract language and facts in *Cook* and the case at bar. The *Phillips* court rejected the nursing home's argument that Colonel Glenn Health makes to our court—that the contractual language clearly contemplates an individual other than a resident entering into the agreements in his or her individual capacity and stated that the agreements do not place any specific obligations or personal liability on the "Responsible Party." *Id.* at 11–

9

13, 586 S.W.3d at 632. Because the arbitration agreements were not valid between the nursing home and the "Responsible Party," the supreme court held that the third-party-beneficiary doctrine did not apply to bind the resident and that the circuit court correctly denied the nursing home's motion to compel arbitration. *Id.* at 12–13, 586 S.W.3d at 633.

Returning to the case at bar, Jeffrey did not sign the arbitration agreement, and Mary did not have legal authority to sign for him. In light of our supreme court's holding in *Phillips* and this court's holdings in *Cook*, *Talley*, *Roberts*, and *Long*, we hold that Colonel Glenn Health failed to demonstrate that when Mary signed the arbitration agreement as a "Responsible Party," she did so in her individual capacity. Therefore, the third-party-beneficiary doctrine does not apply to bind Jeffrey to the arbitration agreement. Accordingly, we affirm the circuit court's order denying Colonel Glenn Health's motion to compel arbitration. Colonel Glenn Health's remaining arguments are moot.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*James, Carter & Priebe, LLP*, by: *Jeff R. Priebe*, for appellee.