Cite as 2021 Ark. App. 505

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-20-718

|  |  |
|---|---|
| ASHLEY OPERATIONS, LLC, D/B/A CROSSETT REHABILITATION AND HEALTH CENTER; ROSS M. PONTHIE; JOHN PONTHIE; JEJ INVESTMETNS, LLC; MARYBRET, LLC; 1101 WATERWELL ROAD, LLC; SLC OPERATIONS MASTER TENANT, LLC; SOUTHERN ADMINISTRATIVE SERVICES, LLC; PROFESSIONAL NURSING SOLUTIONS, LLC; CAREPLUS STAFFING SOLUTIONS, LLC; DEBRA A. WATKINS-JONES, IN HER CAPACITY AS ADMINISTRATOR OF CROSSETT REHABILITATION AND HEALTH CENTER; KIEDRA T. KIRK, IN HER CAPACITY AS DIRECTOR OF NURSING OF CROSSETT REHABILITATION AND HEALTH CENTER; AND JOHN DOES 1 THROUGH 5<br><br>APPELLANTS<br><br>V.<br><br>DONNIE MORPHIS, AS SPECIAL ADMINSTRATOR OF THE ESTATE OF MILDRED MORPHIS, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF MILDRED MORPHIS, DECEASED<br><br>APPELLEE | **Opinion Delivered** December 8, 2021<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CV-18-254]<br><br>HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Ashley Operations, LLC, d/b/a Crossett Rehabilitation and Health Center, and numerous other associated parties (Ashley Operations) bring this interlocutory appeal from an order of the Ashley County Circuit Court denying their motion to compel arbitration of a negligence complaint filed by appellee Donnie Morphis as special administrator of the estate of Mildred Morphis. Appellants argue that the circuit court erred in refusing to enforce a valid arbitration agreement. We find no error and affirm.

On April 6, 2017, Donnie assisted with Mildred's admission to Crossett Rehabilitation and Health Center (CRHC) in Crossett, Arkansas, for medical, nursing, and personal care. The nursing-home facility required signatures on necessary admission documents. Donnie signed the admission form for his mother. The admission agreement recited the following:

> The undersigned resident or resident's representative (collectively, the "Resident") hereby request admission of /s/ Mildred Morphis (Name of Resident) to **Crossett Rehabilitation and Health Center** (the "Nursing Facility" or "Facility") for medical, nursing, and personal care. The Nursing Facility and the Resident agree to the following terms for the Resident's care.

A "Resident Authorization" followed. It stated in pertinent part:

> I, /s/ Mildred Morphis, (Name of Resident) do hereby state that I am of sound mine and competent to execute this Resident Authorization and do so of my own free will and accord. I hereby authorize /s/ Donnie Morphis to handle on my behalf any and all matters associated with my admission as a resident to _____ (Name of Facility). I further give the above-named representative authority to execute on my behalf any and all proposed agreements with the Facility. Specifically, the above-named representative has the authority to accept the terms of and execute any proposed admission agreement and/or arbitration agreement with the Facility.

However, instead of Mildred signing the authorization, Donnie signed it. The admission form requested that Mildred appoint a family member to act as a "responsible party." The

2

admission form also asked two questions: "Do you have a power of attorney?" and "Do you have a legal guardian?" Mildred answered no to both questions. The form then asked Mildred to "[p]lease state the name of the responsible party and one alternate." Donnie was listed as the responsible party, and Brittany Young was listed as the alternate. Mildred did not sign the admission agreement, but Donnie signed as the "Resident's Legal Representative" and "Resident's Representative." Three boxes were listed under the "Resident's Representative" line: "Power of Attorney," "Guardian," and "Other (Specify)." Donnie checked the "Other" box and indicated that he is Mildred's son.

That same day, Donnie also signed an arbitration agreement that was incorporated by the admission form. The form was required to be signed as a condition of Mildred's admission to the facility.[1] The arbitration agreement contained a box next to the signature line asking for the identity of the signatory; the options on the list of signatories were "Resident," "Guardian," "Power of Attorney," "Spouse," and "Adult Children." Donnie checked the box for "Adult Children." A separate line below the signature block read as follows: "_____ (Check if applicable): A copy of my guardianship papers, durable power of attorney[,] or other documentation, [sic] has been provided to the Facility and is attached." The blank was not checked. There was also a place for a witness signature if the document was signed by a "Responsible Party." Donnie signed the document as the "Responsible Party," but not witness signature was included.

---

[1]The agreement contained a ten-day right of recission, which included language stating that the resident would not be discharged from the facility if the resident exercised his or her right to rescission.

Mildred was a resident at CRHC from April 6, 2017, until her death on October 16 at the age of ninety-five. Donnie was appointed special administrator of Mildred's estate on April 12, 2018. He filed the negligence complaint against Ashley Operations on October 26. He stated that as a result of Ashley Operation's negligence, Mildred suffered numerous physical and emotional injuries: multiple falls resulting in injuries, including a frontal hematoma, right clavicle fracture, bruising, and a forehead knot and abrasion; a Stage III left heel pressure ulcer; a Stage II coccyx pressure ulcer; an infected chest lesion; mouth lesions; pneumonia; septic shock; dehydration; renal insufficiency; poor hygiene; unnecessary pain and suffering; and death. Ashley Operations filed an answer on December 5 asserting the existence of an arbitration agreement and denying the material allegations of Donnie's complaint.

Ashley Operations filed a motion to compel arbitration on June 16, 2020, contending that the arbitration agreement encompassed Donnie's claims against it.[2] It argued that Mildred was a third-party beneficiary to the contract between it and Donnie. Ashley Operations alleged that Donnie signed the agreements in his individual capacity, making a valid contract to arbitrate between him and Ashley Operations. Donnie filed a response on June 26, denying the validity and enforceability of the arbitration agreement and asking the circuit court to reserve ruling on Ashley Operations' motion until arbitration-related discovery was complete. Donnie filed a supplemental response on July 14 arguing that he lacked the power or authority to execute the arbitration agreement on Mildred's behalf.

---

[2]The arbitration agreement stated that "any claim, dispute or controversy ("claim") between the parties shall be resolved by final and binding arbitration."

Therefore, he claimed that Mildred could not be a third-party beneficiary to the contract because Donnie was not a party to the contract. He also alleged fraud in the inducement. In sum, Donnie argued that there was never a valid agreement to arbitrate. He again asked the circuit court to reserve its ruling on Ashley Operations' motion until discovery had concluded.

The circuit court held a hearing on Ashley Operations' motion to compel on July 14. At the hearing, Ashley Operations contended that Donnie signed the agreement with them for Mildred's benefit, and as a result of that contract, Mildred resided at CRHC and received medical, nursing, and personal care thus making her a third-party beneficiary. The circuit court did not make an oral ruling but informed the parties that it would make a decision in a couple of weeks. The circuit court filed an order on August 17, denying Ashley Operations' motion to compel. The order stated in pertinent part:

> This Court has read the briefs and the admission and arbitration agreements. Both agreements are attached to this Order for easy reference. The Court denies the Defendants' motion for self-evident reasons found on the first page of Mildred's admission agreement. Perplexingly, these reasons went unbriefed.
>
> . . . .
>
> Had Mildred signed the authorization naming Donnie as her representative, then arguably Donnie would have had the authority to sign the admissions agreement as her representative. But Mildred did not sign the authorization. Instead, Donnie signed as a grantor. Additionally, the name of the facility is left blank. The Court finds that Mildred did not authorize Donnie to act as her representative when given the opportunity to do so.
>
> So, the admission agreement's first sentence refers <u>only</u> to the "resident or resident's representative." The admissions agreement contains no language extending the authority to contract with the facility to anyone else other than the resident or her representative. While the <u>Resident Authorization</u> is clearly intended to operate as a power of attorney "lite", it does not contain Mildred's signature. Because Defendants' Motion to Compel Arbitration is wholly unsupported by the

5

admission agreement's contract term, Defendant's position that Mildred's estate is a third party beneficiary to the admission agreement between Donnie, individually, and the facility beggars belief.

While the arbitration agreement uses the term "responsible party", Mildred's admission agreement does not. In any event, the record contains no proof that Donnie had any authority to act on Mildred's behalf. When the opportunity was afforded Mildred to designate Donnie to act for her, she did not do so.

. . . .

Motion to compel arbitration is denied.

Ashley Operations filed a timely notice of appeal on September 15.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12).[3] We review a circuit court's denial of a motion to compel arbitration de novo on the record.[4] While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal.[5]

The parties do not dispute that the Federal Arbitration Act ("FAA")[6] governs the agreements at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution.[7] Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less

---

[3](2020).

[4]*Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624.

[5]*Progressive Eldercare Services-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

[6]9 U.S.C. §§ 1–16.

[7]*Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356.

expensive and more expeditious means of settling litigation and relieving docket congestion.[8] Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid.[9] The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general.[10] In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope?[11] In answering these questions, doubts about arbitrability must be resolved in favor of arbitration.[12] We are also guided by the legal principle that contractual agreements are construed against the drafter.[13]

We must first determine the threshold inquiry of whether a valid agreement to arbitrate exists.[14] We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3)

---

[8] *Id.*

[9] *Phillips, supra.*

[10] *Id.*

[11] *Id.*

[12] *Colonel Glenn Health and Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344.

[13] *Id.*

[14] *Phillips, supra.*

7

legal consideration, (4) mutual agreement, and (5) mutual obligations.[15] As the proponent of the arbitration agreement, Ashley Operations has the burden of proving these essential elements.[16]

When a third party signs an arbitration agreement on behalf of another, we must determine whether the third party was clothed with the authority to bind the other person to arbitration.[17] The burden of proving an agency relationship lies with the party asserting its existence.[18] Not only must the agent agree to act on the principal's behalf and subject to his control, but the principal must also indicate that the agent is to act for him.[19]

Ashley Operations contend that Donnie signed the arbitration agreement in his individual capacity, and as such, Mildred became a third-party beneficiary. Two elements are necessary in order for the third-party-beneficiary doctrine to apply under Arkansas law: (1) there must be an underlying valid agreement between two parties, and (2) there must be evidence of a clear intention to benefit a third party.[20] Thus, the critical question is whether Donnie signed the arbitration agreement while acting in his individual capacity such that it created an enforceable contract between Donnie and Ashley Operations, with a clear intention to benefit Mildred. Ashley Operations asserts that such is the case. However,

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

8

Donnie argues that he signed the agreement only on behalf of, and as representative of, Mildred. Ashley Operations has failed to demonstrate that Donnie signed the arbitration agreement in his individual capacity rather than a representative capacity. The following statement was located above the signature in the arbitration agreement: "If I am acting as the Resident's Responsible Party and am not the Resident's Guardian or hold Power of Attorney for the Resident, I affirm that I have been given the authority to enter into this Arbitration Agreement by the Resident and to act on his/her behalf." The language in the arbitration agreement itself contemplated someone signing it with representative authority, not in the person's individual capacity. When the agreements were signed, Donnie lacked any authority to act on Mildred's behalf or to bind her. Because there was no valid agreement between Ashley Operations and Donnie, the circuit court correctly denied Ashley Operations' motion to compel arbitration.

To the extent that Ashley Operations argues that the supreme court's ruling in *Jorja Trading, Inc. v. Willis*[21] somehow disposes of our need to resort to state law when determining whether a party is bound by the third-party-beneficiary doctrine, that argument is misplaced. *Jorja* did away with the court's authority to invalidate a provision in an arbitration agreement unless it would likewise invalidate it under Arkansas contract law in general. Here, before a party can bind another as a third-party beneficiary in any contract, he or she must be clothed with the authority to do so. Therefore, the circuit court's ruling in this case does not contradict the supreme court's holding in *Jorja*.

Affirmed.

---

[21] 2020 Ark. 133, 598 S.W.3d 1.

9

HARRISON, C.J., and VAUGHT, J., agree.

*Kutak Rock LLP*, by: *Samantha Blassingame* and *Alexis E. Stevens*, for appellant.

*Wilkes & Associates, PA.*, a/k/a *Wilkes & McHugh, P.A.*, by: *Robert E. Salyer, pro hac vice*, for appellee.