Cite as 2023 Ark. App. 162

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-191

| | |
|---|---|
| FAULKNER-PROGRESSIVE ELDERCARE SERVICES, INC., d/b/a CONWAY HEALTHCARE AND REHABILITATION CENTER, ET AL. APPELLANTS | Opinion Delivered March 15, 2023 APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-19-449] |
| V. | HONORABLE SUSAN WEAVER, JUDGE |
| STEPHEN CARSON, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF ROBERT HENRY CARSON, DECEASED, AND ON BEHALF OF THE WRONGFUL-DEATH BENEFICIARIES OF ROBERT HENRY CARSON, DECEASED APPELLEE | AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Faulkner-Progressive Eldercare Services, Inc., d/b/a Conway Healthcare and Rehabilitation Center, and numerous other associated parties (collectively, "Progressive") bring this interlocutory appeal from an order of the Faulkner County Circuit Court denying their motion to compel arbitration of a lawsuit filed by Stephen Carson, as special administrator of the estate of Robert Carson, deceased, and on behalf of the wrongful-death beneficiaries of Robert. Progressive argues that the circuit court erred in refusing to enforce a valid arbitration agreement. We hold that the circuit court did not err, and we affirm.

On October 30, 2015, Robert was admitted to Conway Healthcare and Rehabilitation Center for medical, nursing, and personal care. Robert did not sign any of the documents required for admission. His son, Stephen, filled out the necessary paperwork, which included an admission agreement and an arbitration agreement. The admission agreement provided in relevant part:

> The undersigned resident or resident's representative (collectively, the "Resident") hereby requests admission of <u>Robert Carson</u> [Name of Resident] to **Faulkner-Progressive Eldercare Services, Inc., d/b/a Conway Healthcare and Rehabilitation Center** (the "Nursing Facility" or "Facility") for medical, nursing, and personal care. The Nursing Facility and the Resident agree to the following terms for the Resident's care. . . .

The admission agreement required the resident to appoint a family member to act as the "Responsible Party" in admission, care and treatment, and discharge decisions. Stephen was listed as the "Responsible Party." The admission agreement also asked two questions: "Do you have a power of attorney?" and "Do you have a legal guardian?" Stephen answered no to both questions. The admission agreement was signed by Stephen as the "Resident's Representative."

As a condition of admission, Progressive required residents to sign an arbitration agreement, which was incorporated by reference in the admission agreement. The arbitration agreement provides that it was "entered between **FAULKNER-PROGRESSIVE ELDERCARE SERVICES, INC., D/B/A CONWAY HEALTHCARE AND REHABILITATION CENTER** (the "Facility") and <u>Robert Carson</u> (Resident and/or

Responsible Party on behalf of the Resident).” The agreement contains the following paragraph before the date and signature lines:

**If I am acting as the Resident’s Responsible Party and am not the Resident’s Guardian or hold Power of Attorney for the Resident, I affirm that I have been given the authority to enter into this Arbitration Agreement by the Resident and to act on his/her behalf.**

The arbitration agreement also contains a box next to the signature line to identify the signatory—here, Stephen. The options are “Resident,” “Guardian,” “Power of Attorney,” “Spouse,” “Adult Children,” “Parents,” “Adult Siblings,” and “Other.” Stephen checked the box for “Adult Children.” A separate line below the signature block provides the following regarding any agency relationship: “____ (check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation, has been provided to the Facility and is attached.” The blank was not checked.

Robert lived at the facility from October 30 through November 9, 2017, when he passed away. Alleging Robert suffered physical and emotional injuries, pain and suffering, and an untimely death due to the actions of Progressive, Stephen filed this wrongful-death action against it on April 15, 2019. Progressive answered, generally denying liability and reserving the right to enforce the arbitration agreement. On September 1, 2021, Progressive moved to compel arbitration of all claims, alleging that “Stephen . . . executed an Admission Agreement and binding Arbitration Agreement encompassing the claims in [his] Complaint.”

Stephen filed a response contending that no valid arbitration agreement existed because the documents lacked the essential elements of mutual agreement and mutual obligation. Regarding mutual agreement, Stephen argued that Robert did not sign the documents and was not bound by Stephen's signature because Stephen did not have the power or authority to bind Robert to the agreements. Stephen also claimed that he signed the documents in his representative—not individual—capacity and that there was no contract between Stephen and Progressive; thus, under our case law, Robert could not be a third-party beneficiary to the contract. Regarding mutual obligation, Stephen pointed to a clause in the admission agreement requiring the resident to "unconditionally" submit "to the jurisdiction of the courts in the State of Arkansas in all matters" arising from the agreements. He claimed that the provision was not mutually binding but allowed Progressive to pursue any actions it might have against a resident in court while requiring a resident to arbitrate all disputes.

Progressive replied to Stephen's response, arguing that there was a valid contract between Progressive and Stephen (who signed the admission agreement and the arbitration agreement) and that Robert was a third-party beneficiary to the contract. Progressive also contended that the contract between the parties does not lack mutuality of obligation because it requires both parties to arbitrate disputes despite Stephen's argument suggesting otherwise.

The circuit court held a hearing on the motion on November 30. After hearing arguments of counsel, the court denied the motion in an order entered on December 2. On

4

appeal, Progressive argues that there was a valid agreement to arbitrate that covers the parties' dispute because Stephen and Progressive mutually agreed to the contract and Robert was bound to the arbitration agreement under the third-party-beneficiary doctrine. Progressive also argues that Stephen and Progressive were mutually obligated under the agreements and that the circuit court erred in applying an arbitration-specific rule to this doctrine.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2022). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d 624, 628–29. While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Progressive Eldercare Servs.-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

The Federal Arbitration Act establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. Before determining that the FAA applies, however, we must determine that a valid agreement to arbitrate exists. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 142, 147 S.W.3d 681, 684 (2004). We look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Ashley Operations, LLC v. Morphis*, 2021 Ark. App. 505, at 7, 639 S.W.3d 410, 415. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.*, 639 S.W.3d at 415. In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered:

(1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *Id.*, 639 S.W.3d at 415. In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *Colonel Glenn Health & Rehab., LLC v. Aldrich*, 2020 Ark. App. 222, at 7, 599 S.W.3d 344, 349. We are also guided by the legal principle that contractual agreements are construed against the drafter. *Id.*, 599 S.W.3d at 349.

We must first determine the threshold inquiry of whether a valid agreement to arbitrate exists. *Courtyard Rehab. & Health Ctr., LLC v. Estate of Tice*, 2022 Ark. App. 327, at 6. We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* As the proponent of the arbitration agreement, Progressive has the burden of proving these essential elements. *Id.*

We turn first to Progressive's argument regarding the third-party-beneficiary doctrine. It contends that Stephen signed the documents in his individual capacity and that Robert was a third-party beneficiary to the contract. Two elements are necessary in order for the third-party-beneficiary doctrine to apply under Arkansas law: (1) there must be an underlying valid agreement between two parties, and (2) there must be evidence of a clear intention to benefit a third party. *Morphis*, 2021 Ark. App. 505, at 9, 639 S.W.3d at 415–16. Thus, the first question is whether Stephen signed the arbitration agreement in his individual capacity such that it created an enforceable contract between him and Progressive. Stephen contends

6

that he signed both agreements on behalf of his father only and not in his individual capacity. We hold that Progressive has failed to demonstrate otherwise.

Stephen signed both the admission agreement and the arbitration agreement as the "Resident's Representative," not as a party to the contract. The parties to both agreements were identified as Robert and Progressive. The following language in the arbitration agreement immediately before the signature line contemplates someone signing it with representative authority: "If I am acting as the Resident's Responsible Party and am not the Resident's Guardian or hold Power of Attorney for the Resident, I affirm that I have been given the authority to enter into this Arbitration Agreement by the Resident and to act on his/her behalf."

However, there was no evidence that Robert authorized Stephen to bind him or act on his behalf. Indeed, both agreements contained specific provisions asking whether Stephen had a power of attorney, guardianship papers, or other documentation. Stephen specifically replied no in the admission agreement and left the question blank in the arbitration agreement. In the box on the admission agreement indicating Stephen's relationship to Robert, Stephen checked "Adult Children" instead of guardian or power of attorney. There was no evidence presented that when Stephen signed the agreements he had authority to bind Robert.

The fact that Stephen did not execute the documents as a legal representative of Robert does not transform the documents into binding agreements between Stephen and Progressive with Robert as a third-party beneficiary. Again, there is no evidence that Stephen

had any intent to sign in an individual capacity, and the agreements specifically state they are between Robert and Progressive. Because there was no valid agreement between Progressive and Stephen or between Progressive and Robert, we hold that the circuit court did not err in denying the motion to compel arbitration. *Progressive Eldercare Servs.-Columbia, Inc. v. Griffin*, 2023 Ark. App. 121, ___ S.W.3d ___; *Tice, supra*; *Morphis, supra*.

To the extent Progressive argues that the supreme court's ruling in *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, disposes of our need to resort to state law when determining whether a party is bound by the third-party-beneficiary doctrine, we have already decided this issue in *Morphis*, 2021 Ark. App. 505, at 10, 639 S.W.3d at 414, and see no reason to depart from that holding. *See also Griffin, supra*; *Tice, supra*.

Because we hold that the circuit court correctly denied Progressive's motion to compel for the foregoing reasons, we do not address Progressive's argument on mutuality of obligation. Accordingly, we affirm the circuit court's order denying Progressive's motion to compel arbitration.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Kutak Rock LLP*, by: *Mark W. Dossett*, *Jeff Fletcher*, and *Caleb S. Sugg*, for appellants.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *Rainwater, Holt & Sexton, P.A.*, by: *Jeff R. Priebe*, for appellee.