

# SUPREME COURT OF ARKANSAS

**No.** CV–14–37

|  |  |
|---|---|
| REGIONAL CARE OF JACKSONVILLE, LLC, D/B/A WOODLAND HILLS HEALTHCARE AND REHABILITATION OF JACKSONVILLE; WOODLAND HILLS HEALTHCARE AND REHABILITATION OF JACKSONVILLE, LLC; CORNERSTONE HEALTH CARE, INC.; CHRISTIAN HEALTH CARE HOSPICE, INC.; AND ANGELA HERD, IN HER CAPACITY AS ADMINISTRATOR OF WOODLAND HILLS HEALTHCARE AND REHABILITATION OF JACKSONVILLE <br><br> APPELLANTS <br><br> V. <br><br> SHIRLEY HENRY, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LUCILLE BETNCOURT, DECEASED <br><br> APPELLEE | **Opinion Delivered** September 11, 2014 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-13-3149] <br><br><br> HONORABLE TIMOTHY DAVIS FOX, JUDGE <br><br><br><br><br><br><br> <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellants Regional Care of Jacksonville, LLC, d/b/a Woodland Hills Healthcare and

Rehabilitation of Jacksonville; Woodland Hills Healthcare and Rehabilitation of Jacksonville,

LLC; Cornerstone Health Care, Inc.; Christian Health Care Hospice, Inc.; and Angela Herd,

in her capacity as administrator of Woodland Hills Healthcare and Rehabilitation of

Jacksonville (collectively "Woodland Hills"), appeal the order entered by the Pulaski County Circuit Court denying their motion to dismiss and to compel arbitration of the claims asserted against them by appellee Shirley Henry, as special administrator of the Estate of Lucille Betncourt, deceased (Henry). For reversal, Woodland Hills contends that the circuit court erred by not requiring arbitration of Henry's claims. We affirm the circuit court's decision.

The record reflects that Lucille Betncourt was a resident of Woodland Hills, a nursing-home facility, on eight separate occasions between January 2008 and her death in December 2012. Woodland Hills provided an admission agreement to its residents for execution upon entering the facility. Betncourt signed admission agreements on January 4, 2008, March 10, 2008, and May 20, 2010. She signed the latter two agreements with an "X." Dewey Brockwell, Betncourt's husband, executed an admission agreement as the "Responsible Party" on September 8, 2010. Henry, Betncourt's daughter, signed the last four admission agreements as the "Responsible Party" on November 15, 2011, June 4, 2012, June 28, 2012, and September 26, 2012. All of the admission agreements contained an arbitration clause.

On August 12, 2013, Henry filed a complaint against Woodland Hills asserting causes of action for negligence, medical malpractice, breach of the admission agreement, violations of the Arkansas Long-Term Care Residents' Right Act, breach of the Medicare/Medicaid provider agreement, and for violating the Arkansas Deceptive Trade Practices Act. Woodland Hills subsequently filed a motion to dismiss and to compel arbitration of these



claims.  In its supporting brief, Woodland Hills relied on the arbitration clauses, which are

identical, found in each of the admission agreements executed after 2008.  This clause states

as follows:

> **Arbitration.**  By signing this Admission Agreement, Resident, Responsible
> Party, and Guarantor agree with the Facility that any dispute between the
> Parties, other than a dispute over billing or collecting for services, but
> including any services rendered prior to the date this Admission Agreement
> was signed, and any dispute arising out of the diagnosis, treatment, or care of
> the Resident, including the scope of this arbitration clause and the arbitrability
> of any claim or dispute, against whomever made (including, to the fullest
> extent permitted by applicable law, third parties who are not signatories to this
> Admission Agreement) shall be resolved by binding arbitration.  The Parties
> hereby agree and intend that this Admission Agreement and the Resident's stay
> at the Facility substantially involve interstate commerce, and stipulate that the
> Federal Arbitration Act ("FAA") in effect as of November 1, 2008 and federal
> case law interpreting such version of the FAA shall apply to this Admission
> Agreement, shall preempt any inconsistent state law and shall not be reverse
> preempted by the McCarran-Ferguson Act: United States Code Title 15,
> Chapter 20, or other law.  Any amendment to such version of the FAA is
> hereby expressly waived.  This Admission Agreement binds all parties whose
> claims may arise out of or relate to treatment or service provided by the
> Facility, including any spouse or heirs of the resident.  **This provision for
> arbitration may be revoked by written notice delivered to the Facility
> within twenty-one (21) days of signature.**  Resident, Responsible Party
> and Guarantor understand that the result of this arbitration agreement is that
> claims, other than those dealing with billing or collection matters, but
> including malpractice claims Resident, Responsible Party, and Guarantor may
> have against the Facility and its employees and agents, cannot be brought as a
> lawsuit in court before a judge or jury, and agree that all such claims will be
> resolved as described in this section.  The arbitrator(s) shall apply the Federal
> Rules of Evidence and Federal Rules of Civil Procedure except where
> otherwise stated in this Admission Agreement.  Also, the arbitrator(s) shall
> apply, and the arbitration award shall be consistent with, the state substantive
> law (including any and all statutory damage caps) for the state in which the
> Facility is located, except as otherwise stated in this Admission Agreement or
> where preempted by the FAA. Any award of the arbitrator(s) may be entered
> as a judgment in any court having jurisdiction over the Parties.  In the event
> an arbitrator(s) or a court having jurisdiction finds any portion of this
> Admission Agreement unenforceable, that portion shall not be effective and

the remainder of the Admission Agreement shall remain in full force and effect. This Arbitration provision shall remain in full force and effect notwithstanding the termination, cancellation, or natural expiration of this Admission Agreement and/or the death of Resident.

(Bold typeface in original.) Woodland Hills argued that the arbitration clause in question was enforceable because it contained mutual obligations to arbitrate. It also asserted that the admission agreements signed by Henry were binding on Betncourt's estate because Henry was clothed with apparent authority to act on Betncourt's behalf. Alternatively, Woodland Hills argued that the estate was bound by the admission agreements executed by Henry because Betncourt was a third-party beneficiary of the agreements. In response, Henry contended that, in executing the agreements, she did not possess the authority necessary under the law of agency to bind Betncourt; that the arbitration clause failed for lack of mutuality of obligation; and that the arbitration clause at issue was unconscionable. She also contended that Betncourt lacked the mental capacity to enter into the admission agreement executed in May 2010 and that Betncourt did not make a knowing and voluntary waiver of the right to a jury trial when she signed that agreement. Woodland Hills filed a brief in reply to the arguments made by Henry.

On December 12, 2013, the circuit court entered an order succinctly finding "that Defendants' Motion to Dismiss and to Compel Arbitration should be and hereby is denied." Woodland Hills filed a motion asking the circuit court to amend its order to include specific findings on the issues raised by the parties. The circuit court denied the motion by written order, and this timely appeal followed.

Before addressing the merits of the appeal, we note that an order denying a motion to

4

SLIP OPINION

compel arbitration is an immediately appealable order under Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2013). When a circuit court denies a motion to compel arbitration without expressly stating the basis for its ruling, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, ___ S.W.3d ___. On appeal, we review a circuit court's order denying a motion to compel arbitration de novo on the record. *HPD, LLC v. Tetra Techs., Inc.*, 2012 Ark. 408, 424 S.W.3d 304.

For reversal, Woodland Hills first contends that the documentation submitted by Henry does not support a finding that Betncourt was mentally incompetent to execute the agreements. It next argues that the admission agreements executed by Henry are valid and enforceable because it reasonably relied on Henry's apparent authority to enter into the agreements. As an alternative to that argument, Woodland Hills asserts that the agreements signed by Henry are binding on the estate because Betncourt was a third-party beneficiary of the agreements. In another issue, it contends that the circuit court erred in concluding that mutuality of obligation did not exist. Last, it maintains that the arbitration clause is not unconscionable. We confine our decision to the issue of mutuality, as it is dispositive of the outcome of the appeal.

As stated, there were eight admission agreements executed in connection with Betncourt's residencies at Woodland Hills. Each of them excluded from the requirement of arbitration "a dispute over billing or collecting for services." Henry argued below, and the circuit court agreed, that mutuality of obligation was lacking because, by carving out billing

or collection for services, Woodland Hills reserved the right to hail its residents into court to pursue the most likely claim it would have against them, while exclusively binding its residents to arbitrate any claims that residents might have against it. In contesting the circuit court's ruling, Woodland Hills argues that mutuality of obligation exists because a resident, particularly one who pays for services privately, could possibly dispute a charge for services and thus might have a claim for billing.

The parties in this matter do not dispute that the Federal Arbitration Act (FAA) applies in this case. Congress enacted the FAA, 9 U.S.C. §§ 1–16, to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). The Act establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). So, too, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Newby*, *supra*. Although an arbitration provision is subject to the FAA, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 423 S.W.3d 555.

This court has observed that a threshold inquiry is whether a valid agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. *See Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). We also have said that the essential elements for an enforceable arbitration agreement are (1)

competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357.

In Arkansas, the element of mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). A contract, therefore, that leaves it entirely optional with one of the parties as to whether he will perform his promise would not be binding on the other. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Cash in a Flash Check Advance of Ark., LLC v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001).

These basic principles of mutuality are illustrated in our decision of *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004). There, this court held that an arbitration agreement lacked the necessary mutuality of obligation because swine producers were limited to pursuing any grievance in an arbitral forum, while the owner of the swine retained the sole right to pursue legal or equitable remedies in a court of law. Perhaps more instructive here is our opinion in *E-Z Cash*, *supra*. In that case, we found that an arbitration clause was not enforceable where the clause allowed the check casher the right to all civil remedies, including

a return–check fee, court costs, and attorney's fees, when a check was returned, but limited the customer to arbitration. Although the clause allowed both parties access to small–claims court, we held that any argument that this provision supplied the necessary mutuality was "disingenuous" in light of the other provision allowing the check casher to go to court for returned checks because "taking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration." *E-Z Cash*, 347 Ark. at 141, 60 S.W.3d at 442. In other words, mutuality was deemed lacking because the check casher could litigate the only kind of claim that it might have against a borrower.

In the case at bar, we also conclude that the arbitration clause lacks mutuality. By reserving the right to litigate billing or collection disputes, Woodland Hills excluded from arbitration the only likely claim it might have against a resident. Its argument that a private-pay resident might have a billing claim rings hollow in light of this reservation, and particularly so in this case where the resident was a recipient of Medicaid and Medicare. The fact remains that Woodland Hills retained the right to litigate its billing and collection claims, while strictly limiting the residents to arbitration. Thus, the clause imposes no real liability on Woodland Hills to arbitrate its own claims. For these reasons, the arbitration clause offends our law requiring mutuality of obligation and cannot be enforced.[1] Because no valid

---

[1] There is some question in this appeal as to which admission agreement is controlling in this case, and the parties have directed their arguments to all of them. We need not decide which one is the operative agreement because each arbitration clause excepts billing and collection disputes from arbitration and thus fails for want of mutuality.

arbitration agreement exists due to lack of mutuality, we need not address any of the remaining issues. *Pine Hills Health & Rehab., LLC v. Matthews*, 2014 Ark. 109, 431 S.W.3d 910.

Affirmed.

*Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark* and *Kelly Carithers*, for appellants.

*Reddick Moss, PLLC*, by: *Brian D. Reddick*, *Robert W. Francis*, and *Matthew D. Swindle*; and *Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*, for appellees.