Cite as 2020 Ark. App. 239

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-629

|  |  |
|---|---|
| | **Opinion Delivered** April 15, 2020 |
| COUNTRY CLUB GARDENS, LLC, D/B/A LAKE HAMILTON HEALTH AND REHAB; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND COUNTRY CLUB MANOR, LLC APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-17-1603] |
| V. | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| D'ANN PELTON ALEXANDER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MARY ELIZABETH PELTON AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF MARY ELIZABETH PELTON APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Country Club Gardens, LLC, d/b/a Lake Hamilton Health and Rehab; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Country Club Manor, LLC (collectively Lake Hamilton Health), appeal the order entered by the Garland County Circuit Court denying a motion to compel arbitration based on its finding that the agreement lacked mutuality of obligations. Lake Hamilton Health argues that the circuit court clearly erred in refusing to enforce the valid arbitration agreement. We affirm.

On January 14, 2014, Mary Elizabeth Pelton was admitted into Lake Hamilton Health and Rehab, a nursing-home facility. She resided there for approximately two years until her

death on September 6, 2016. Upon Mary's admission into Lake Hamilton Health and Rehab, D'Ann Pelton Alexander signed the admission agreement and an arbitration agreement as Mary's daughter and attorney-in-fact.[1]

The arbitration agreement provides:

It is understood and agreed by Facility and Resident and/or Responsible Party that any and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident that would constitute a cause of action in a court of law that the Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have now or in the future against the Facility, as defined above, and involving an amount of or greater than thirty-thousand dollars and no cents ($30,000.00) shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process. This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, fact, or inducement, when the amount in controversy equals or exceeds thirty-thousand dollars and no cents ($30,000.00).

. . . .

By signing this agreement, the Parties acknowledge their understanding and agreement that all disputes will be resolved by binding arbitration:

THE PARTIES FURTHER ACKNOWLEDGE THAT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AND ARE INSTEAD ACCEPTING THE USE OF ARBITRATION.

On December 27, 2017, D'Ann, as special administrator of Mary's estate and on behalf of Mary's wrongful-death beneficiaries, filed a complaint against Lake Hamilton Health

---

[1]D'Ann had authority to execute documents on her mother's behalf pursuant to a durable power of attorney executed on April 17, 2013.

asserting claims of negligence and medical malpractice. The complaint alleged that while Mary was in Lake Hamilton Health and Rehab's care, she suffered multiple falls, pressure sores, lacerations, bruising and skin tears, urinary tract infections, pneumonia, malnutrition, shearing, severe pain, and poor hygiene that led to her death. Lake Hamilton Health answered the complaint and affirmatively stated that the dispute is governed by the arbitration agreement.

D'Ann filed a motion for a declaratory judgment on May 17, 2018, seeking a declaration from the circuit court that the arbitration agreement is "invalid and unenforceable for lack of mutuality of obligation[s]." In the motion, D'Ann argued that Lake Hamilton Health is part of a state-wide nursing-home conglomerate of twenty-nine nursing homes around Arkansas that use the same or similar arbitration agreements. D'Ann attached documents to her motion that she claims support her argument that the typical lawsuits filed by nursing homes within the conglomerate against its residents are for billing disputes for less than $30,000. In contrast, she contends that her claim against Lake Hamilton Health for negligence and medical malpractice exceeds $30,000 and typifies the claims residents bring against the nursing homes. D'Ann also attached an affidavit of an Arkansas attorney who states she has filed nearly one hundred nursing-home lawsuits and never pursued one that she valued at less than $30,000. The attorney also states in the affidavit that in her thirty years of practice, she has never encountered a lawsuit filed by a nursing home against a resident seeking damages for more than $30,000. On May 31, Lake Hamilton Health filed a response to the motion for a declaratory judgment and a motion to compel arbitration.

On April 15, 2019, the circuit court entered an order denying Lake Hamilton Health's motion to compel arbitration finding that the arbitration agreement lacked mutuality of

obligations. Lake Hamilton Health brings this appeal, arguing that the circuit court clearly erred in finding that the arbitration agreement lacked mutual obligations and in denying its motion to compel arbitration.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2019). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d 624, 628–29. We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 9, 546 S.W.3d 508, 512.

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) whether there is a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, whether the dispute falls within its scope. *Phillips*, 2019 Ark. 305, at 5, 586 S.W.3d at 629. The focus of this appeal is on the first question—whether there is a valid agreement to arbitrate between the parties. We look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Id.*, 586 S.W.3d at 629. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.*, 586 S.W.3d at 629. We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* at 6, 586 S.W.3d at 629–30. As the proponent of the arbitration agreements, Lake Hamilton Health has the burden of proving these essential elements. *Id.*, 586 S.W.3d at 630.

4

In Arkansas, mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. *Hickory Heights Health & Rehab, LLC v. Adams*, 2018 Ark. App. 560, at 4, 566 S.W.3d 134, 137. A contract, therefore, that leaves it entirely optional with one of the parties as to whether that party will perform the promise would not be binding on the other. *Id.*, 566 S.W.3d at 137. There is no mutuality of obligations when one party uses an arbitration agreement to shield itself from litigation while reserving to itself the ability to pursue relief through the court system. *Id.* at 4–5, 566 S.W.3d at 137. Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Id.* at 5, 566 S.W.3d at 137.

In this case, Lake Hamilton Health contends that the arbitration agreement satisfies the element of mutual obligations because both parties are clearly and unequivocally required to submit any disputes to arbitration when the amount in controversy is greater than $30,000, and both parties are free to pursue disputes involving an amount in controversy of less than $30,000 by a lawsuit or other legal process. Lake Hamilton Health asserts that the obligations are mutual because there are situations in which the nursing home could have a claim against a resident that has a value greater than $30,000 (i.e., a billing dispute) and a resident could have a claim against the nursing home that has a value less than $30,000 (i.e., a personal-injury claim, a billing dispute, or a claim for lost or stolen property).

In *Adams*, a case directly on point, our court rejected Lake Hamilton Health's argument. There, this court held that the arbitration agreement—the very same agreement at issue in the

5

case at bar—lacked mutuality of obligations under Arkansas contract law. *Adams*, 2018 Ark. App. 560, at 7, 566 S.W.3d at 138. We held:

> Even though the arbitration agreement did not explicitly exclude a type of claim from its scope or require only one party to forgo its right to the court system, the arbitration provision was obviously drafted to shield Hickory Heights from defending itself in the court system against the majority of residents' potential claims while maintaining its right to utilize the court system for its likely claims against residents. Our supreme court has held that such arbitration agreements lack mutuality. *See Reg'l Care [of Jacksonville, LLC v. Henry]*, 2014 Ark. 361, 444 S.W.3d 356; *E-Z Cash*, 347 Ark. 132, 60 S.W.3d 436. Accordingly, it is not a valid and enforceable arbitration agreement.

*Id.*, 566 S.W.3d at 138. Accordingly, we affirmed the circuit court's order denying the nursing home's motion to compel arbitration. *Id.*, 566 S.W.3d at 139.

After we handed down *Adams*, our supreme court in *Phillips* was presented with the question of whether the arbitration agreements there—which contain the same language as the arbitration agreements in *Adams* and in the case at bar—lack mutuality of obligations. In *Phillips*, the nursing home made the same argument that Lake Hamilton Health makes here—the arbitration agreement imposes a monetary threshold that applies equally to the parties and that there are situations where the nursing home could have a claim against a resident for more than $30,000, and a resident could have a claim against the nursing home for less than $30,000. *Phillips*, 2019 Ark. 305, at 15–16, 586 S.W.3d at 634. The supreme court rejected the argument. Citing our holding in *Adams* with approval, the supreme court concluded that the arbitration agreements containing the $30,000 limitation lack mutuality of obligations. *Id.* at 16, 586 S.W.3d at 634–35.

> As in *Adams*, we believe that the arbitration agreements here serve to shield Robinson from defending itself in the court system against the majority of potential claims by residents, while reserving its right to utilize the court system for its likely claims. Accordingly, these arbitration agreements are not valid or enforceable, and the circuit court correctly denied the motions to compel as to these agreements.

6

*Id.* at 16–17, 586 S.W.3d at 635.

In light of our supreme court's holding in *Phillips*, which cited our holding in *Adams* with approval, we hold that the arbitration agreement in the case at bar lacks mutuality of obligations, is invalid, and is unenforceable.[2] Accordingly, we hold that the circuit court did not clearly err in denying Lake Hamilton Health's motion to compel arbitration, and we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*The Edwards Firm, PLLC*, by: *Robert H. Edwards*; and *James, Carter & Priebe, LLP*, by: *Jeff R. Priebe*, for appellee.

---

[2] Last week, our supreme court handed down an opinion that addressed the mutuality-of-obligations element in the context of an arbitration clause within an installment-sales contract. *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133. There, the supreme court reversed and remanded the circuit court's order denying the appellant's motion to compel, holding that the installment-sales contract satisfied the element of mutuality of obligations. We note that the arbitration clauses at issue in *Jorja Trading* (self-help, class-action waiver, and arbitrator selection) are not the same as the provisions in question within the arbitration agreement in the case at bar. Further, as set forth above, the supreme court's holding in *Phillips*, on which we rely, is directly on point and was not overruled in *Jorja Trading*.