Cite as 2023 Ark. App. 237

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-398

| | |
|---|---|
| SALEM PLACE NURSING AND REHABILITATION CENTER, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON<br><br>APPELLANTS | Opinion Delivered April 26, 2023<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-21-239] |
| V. | HONORABLE SUSAN K. WEAVER, JUDGE |
| VICKY DIANE JEFFERSON, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF RHONDA LYNN JEFFERSON, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF RHONDA LYNN JEFFERSON<br><br>APPELLEE | REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Salem Place Nursing and Rehabilitation Center, Inc.; Nursing Consultants, Inc.; and Michael Morton (collectively, Salem Place) appeal the Faulkner County Circuit Court order denying the motion to compel arbitration for lack of a valid arbitration agreement. We reverse and remand.

I. *Background*

Salem Place operates a skilled nursing facility in Conway. Rhonda Jefferson, the daughter of appellee Diane Jefferson, became a resident of the facility on March 16, 2020,

for short-term rehabilitation care. On the day of her admission, Rhonda verbally gave her mother permission to complete the admission forms because she was physically unable to do so herself. Diane signed the admission agreement as her daughter's "Responsible Party." Section 6 of the admission agreement set forth the terms of the arbitration agreement. Diane also signed the arbitration agreement as the "Responsible Party" and wrote that her relationship to the resident is "Mother." Additionally, Diane signed a document titled "Capacity Verification" as Rhonda's "Resident Representative," and again, she wrote "Mother" in the space labeled "Relationship to Resident." The capacity-verification form includes spaces for the signor to place a check mark next to statements regarding the resident's mental and physical capacity. Diane placed a check on the line next to the statement that Rhonda "[h]as the capacity to understand the nature of his or her medical condition and the consequence of treatment decisions"; however, Diane left blank the following statement regarding the resident's incapacity to sign forms and the reason for the incapacity, as follows:

> _____**Unable to sign forms**. Has the capacity, waxing or waning capacity, to understand the nature of his or her medical condition and the consequences of treatment decisions; and acknowledges that he or she understands the content of the admission forms. Resident is physically unable to sign forms due to: _____

At the bottom of the one-page capacity-verification form, a separate, handwritten sentence sets forth that "I give my mother permission to complete my admit paperwork. RJ."[1] At no time did Diane have a written power of attorney or guardianship over Rhonda.

Rhonda was discharged from Salem Place on May 8 and died a week later from complications of sacral decubitus ulcers she allegedly developed while at Salem Place. In March 2021, Diane, as special administratrix of Rhonda's estate, filed a survival and wrongful-death suit against appellants claiming ordinary negligence, violation of ordinary duty of care, medical-malpractice negligence, and violation of the professional standards of care. A separate claim alleging negligence was filed against Michael Morton as owner of the facility.

Appellants moved to dismiss the complaint and compel arbitration pursuant to the arbitration agreement. Appellants asserted that Diane had actual authority to sign the admission agreement, including the arbitration agreement, because Rhonda had given Diane permission to complete the admission paperwork for her.

Time and again, this court and the Arkansas Supreme Court have been presented with the question of whether arbitration agreements in nursing-home admissions are enforceable. It is a question of great importance. The residents being admitted to the nursing homes are vulnerable due to age, incapacity, or other infirmity. They are in need of skilled

---

[1]Given the discussion below about the particular circumstances surrounding the execution of the documents at issue in this case and the narrow issue before us, we do not place any weight on this handwritten notation allegedly initialed by Rhonda Jefferson.

medical care. In most cases, as in the case before us now, agreeing to the arbitration agreement is a condition of admission. The arbitration agreement requires that the resident give up her right to seek redress in civil court for injuries or death from the nursing home, a right guaranteed to the resident by article 7 of the Arkansas Constitution, if the resident wants the medical care the nursing home provides. This condition of admission is currently the subject of controversy, federal regulations, and litigation. Regardless of the outcome, the significance is clear. So it is fitting that our courts have carefully scrutinized the circumstances surrounding the admission process and the relinquishment of a constitutional right as a condition of receiving medical care. The cases invariably involve someone other than the patient signing the admission forms, including the arbitration agreement. We have consistently held that another party signing the forms as "representative," "relative," "mother," "responsible party," and even "power of attorney" does not necessarily determine the existence or validity of an agreement given the circumstances and facts of each case. *See Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624; *Colonel Glenn Health & Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344; *Broadway Health & Rehab., LLC v. Roberts*, 2017 Ark. App. 284, 524 S.W.3d 407; *Progressive Eldercare Servs.-Chicot, Inc. v. Long*, 2014 Ark. App. 661, 449 S.W.3d 324.

In the case now before this court, we have what is presented as a simple verbal permission that the resident gave to her mother to sign the forms. The appellants argue that this creates an agency and authority.

Diane resisted arbitration, arguing that the arbitration agreement was invalid and unenforceable as a matter of law. Diane contended that the undated, handwritten sentence at the bottom of the capacity-verification form stating that she had permission to complete Rhonda's "admit paperwork" was added after she had signed and was not written in her presence. Diane disputed that Rhonda would have written her initials as her signature. Diane asserted that she did not have the authority to bind Rhonda to arbitration, and Rhonda did not know she was giving up her right to a jury trial because no one explained the admission paperwork or the arbitration agreement. Diane asserted that Xs were placed where she was required to sign, and she was never given a copy of the admission agreement. Diane argued that even if the arbitration agreement was valid, it was unenforceable as unconscionable because it was never communicated or explained to Rhonda. Diane requested that the court deny the motion to compel.

Debbie Howell, the social-services director at Salem Place, swore an affidavit stating that she assisted Rhonda with the admission process and that Rhonda gave her mother permission to complete the admission paperwork on her behalf. Howell explained that she "presented the paperwork, including the arbitration agreement." She stated that she gave a general explanation and an opportunity for Rhonda and Diane to read the arbitration agreement and invited them to ask questions or "consult with anyone regarding its terms." Neither Rhonda nor Diane had any objection or questions, and Howell recalled that Diane signed the forms in Rhonda's presence. Additionally, Howell stated that she wrote the

sentence at the bottom of the capacity-verification form, and Rhonda signed with her initials. Howell did not specify when she wrote the sentence or when Rhonda signed.[2]

Diane also submitted an affidavit in which she reiterated the facts in her complaint. She stated that Rhonda was unable to hold a pen the day of her admission and "was too weak to sign anything at that time." Rhonda agreed to let her fill out the paperwork because she (Rhonda) was unable to write. Diane stated that her daughter was in the room when the papers were presented and signed but that no one from Salem Place explained the paperwork to either her or Rhonda. The document was not read to them, and no one told them that there was an arbitration agreement or that agreeing to arbitration was a condition of admission. The document contained Xs where she was supposed to sign, and she signed. Diane explained that Rhonda did not write the statement on the capacity-verification form or sign her initials, and the undated, handwritten statement was not on the form when she signed the paperwork.

Following a hearing, the circuit court ruled that appellants "failed to meet their burden of demonstrating that a valid arbitration agreement existed" and denied Salem Place's motion. Salem Place appealed, arguing that the circuit court erred in finding it failed to meet its burden of demonstrating that a valid arbitration agreement existed.

II. *Discussion*

---

[2]As previously stated, we do not place any weight on this handwritten notation allegedly initialed by Rhonda.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2022). The denial of a motion to compel arbitration is reviewed de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Id.*

The Federal Arbitration Act (FAA) governs the agreements at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id.* Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Phillips*, *supra*. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *Id.* In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *Colonel Glenn Health & Rehab, LLC*, 2020 Ark. App. 222, 599 S.W.3d 344.

At the outset, it must be determined whether a valid agreement to arbitrate exists. *Phillips*, *supra*. Here, the circuit court found it did not. We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* As the proponent of the arbitration agreement, appellants have the burden of proving these essential elements. *Id.*

While the circuit court ruled that Salem Place "failed to meet their burden of demonstrating that a valid arbitration agreement existed," the court did not explain how the appellants had failed to meet their burden or what elements were lacking. Upon review, it is evident from the record that the primary issue litigated by the parties below was whether Diane had the agency authority to sign the admission agreement, including the arbitration agreement, on Rhonda's behalf. That being so, we limit our discussion to that issue.

The unique question presented here is whether Rhonda's mother, Diane Jefferson, was clothed with agency authority to execute the admission agreement on Rhonda's behalf to such an extent that Diane's signature binds Rhonda. More specifically, the narrow question is whether Diane's signature on the arbitration agreement binds Rhonda.

Of particular importance in discussing the issues herein are the following excerpts from the record. In paragraph 11 of the appellee's complaint, appellee alleges that "Rhonda was mentally competent [at the time of admission]. . . ." Further, in appellee's response to the appellant's motion for arbitration, Diane submitted a sworn affidavit. The affidavit provides in pertinent part: "6. Rhonda was too weak to sign anything at that time. She could

8

not hold a fork, a phone or a pen. 7. Rhonda agreed that I could fill out the admissions paperwork for her since she could not write."

The arguments below centered on whether Diane was Rhonda's authorized agent when Diane executed the admission agreement and arbitration agreement.

Salem Place asserts on appeal that Rhonda conferred agency on her mother when she verbally gave Diane permission to sign the admission agreement, and Diane had the authority to enter the arbitration agreement. We agree that Diane was Rhonda's agent and was authorized to execute the admission agreement, including the section 6 arbitration agreement.

When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, at 6, 428 S.W.3d 437, 442. Because the principal is not the signor of the documents in question, a determination of the third party's authority must be the first step in reviewing a contract that seeks to bind the principal. Agency is not presumed, and if there is uncertainty or ambiguity in an agreement or it is susceptible to more than one reasonable construction, our courts construe it most strongly against the party who drafted it. *Hickory Heights Health & Rehab v. Cook*, 2018 Ark. App. 409, at 10, 557 S.W.3d 286, 292. Here, Salem Place has the burden of proving an agency relationship. *See Quarles*, 2013 Ark. 228, at 7, 428 S.W.3d at 443. The law on agency is well settled:

9

We have adopted the definition of agency contained in the Second Restatement of the Law of Agency, § 1, comment a, which provides that the relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control. The two essential elements of the definition are authorization and right to control.

*Id.* at 6, 428 S.W.3d at 442–43 (quoting *Evans v. White*, 284 Ark. 376, 378, 682 S.W.2d 733, 734 (1985)).

Ordinarily, agency is a question of fact to be determined by the trier of fact, but where the facts are undisputed, and only one inference can reasonably be drawn from them, it becomes a question of law. *Campbell v. Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963).[3]

In *Oak Leaf Mill Co. v. Cooper*, 103 Ark. 79, 86, 146 S.W. 130, 133 (1912), the supreme court stated,

The question in all such cases, relative to the acts of a general agent, is, not whether the authority of such agent was limited, but whether the person dealing with such agent had knowledge or notice of such limitation of his authority. In the absence of notice to the contrary, a person dealing with an admitted agent has a right to presume that he is a general agent, and that he is acting within the scope of his authority. 1 Clark & Skyles on Agency, § 200; 31 Cyc. 1645. If the authority of such general agent is actually limited, the principal is still bound for any act done or contract made

---

[3]Until now, the issue of agency in the context of arbitration agreements in a nursing-home setting has typically come before our appellate courts in the context of a power of attorney or guardianship. In those cases, this court looked to the specific language of the power of attorney or order of guardianship to determine whether the resident's agent had the authority to enter an arbitration agreement on the resident's behalf. *See Progressive Eldercare Servs.-Drew, Inc. v. Everett*, 2021 Ark. App. 353, 635 S.W.3d 502; *Malvern Operations, LLC v. Moss*, 2020 Ark. App. 355, 605 S.W.3d 291; *Courtyard Gardens Health & Rehab. v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685. Here, we have no written authorization to review; thus, the above cases and others like them are distinguishable and offer no direction when, as here, the ostensible authority is one of a verbal grant of agency.

within the apparent scope of his authority, in the absence of notice to the contrary by a person dealing with him. The burden is upon the principal to show such notice to or knowledge by the person dealing with him. *Brett v. Bassett*, 63 Ia. 340[, 19 N.W. 210]; *Planters & Merchants Bank v. King*, 9 Ala. 279 [1846].

Further, 3 C.J.S. *Agency* § 573 states:

> **Evidence admissible on the question of the authority of an agent includes, within proper limitations, the testimony of the principal and evidence of the principal's acts, declarations, instructions, or silence.**
>
> Evidence of the appearance of an agent's authority as created by the principal's actions and words is always admissible to show the agent's authority to represent the agent in the manner contested or alleged, but the facts of such evidence must emanate from the principal and not the agent. Evidence that the alleged principal remained silent after the receipt of notice that he or she was the maker of a note due is admissible on whether alleged principal authorized another to sign. The principal's knowledge, acquiescence, or assent, where shown, supports the admission of extrajudicial declarations of the agent. The principal's declarations, unlike those of the agent, are admissible to prove the fact that the agent was acting within the scope of his or her agency or employment.

(Footnotes omitted; WL current through April 2023.)

In analyzing whether Diane had the authority to execute the admission agreement, including the arbitration agreement, and whether Rhonda limited Diane's authority, we scoured the record to discover and review all the instructions Rhonda gave Diane when the agency was created. To that end, we rely on the following excerpts in the record set forth above. In Diane's sworn affidavit filed in response to the motion for arbitration, Diane stated, "6.  Rhonda was too weak to sign anything at that time [time of admission]. She could not hold a fork, a phone or a pen.  7.  Rhonda agreed that I could fill out the admissions paperwork for her since she could not write." Further, in paragraph 11 of Diane's complaint, she alleged that "Rhonda was mentally competent [at the time of admission].  . . ." Likewise,

11

the affidavit of Debbie Howell, Salem Place's social director who assists residents in reviewing and completing the admissions agreements, provides in pertinent part:

> 5. Rhonda Jefferson indicated to me at that time she wanted her mother, Diane Jefferson, to complete the admission paperwork on her behalf, and she gave her mother permission to do so in my presence.
>
> . . . .
>
> 9. I do not recall Rhonda Jefferson or Diane Jefferson raising any objection to Diane Jefferson signing the Arbitration Agreement.
>
> 10. Diane Jefferson and I both signed the Arbitration Agreement in each other's presence and in the presence of Rhonda Jefferson.

That is the sum and substance of the evidence in the record relating to the creation of the agency. There is no evidence in this record that Rhonda limited the scope of Diane's agency, and the only inference that reasonably can be drawn is that Diane had the express authority to execute the admission agreement, including the section 6 arbitration agreement, on Rhonda's behalf.

We hold that Diane had the authority to execute the admission agreement and arbitration agreement on Rhonda's behalf, and we reverse and remand to the circuit court to determine (1) the threshold issue of whether a valid agreement to arbitrate exists; (2) if a valid agreement exists, whether the dispute falls within the scope of the agreement; and (3) if (1) and (2) are present, whether applicable defenses, such as fraud, duress, or unconscionability, may be applied to invalidate the arbitration agreement. *See Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357.

Reversed and remanded.

THYER and HIXSON, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; *The Edwards Firm, P.L.L.C.*, by: *Robert H. Edwards*; and *McMath Woods, P.A.*, by: *Will Bond*, *Carter Stein*, and *Sarah Jewell*, for appellee.