Cite as 2026 Ark. App. 236

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-258

|  |  |
|---|---|
| | Opinion Delivered April 15, 2026 |
| SHERWOOD NURSING & REHABILITATION CENTER, INC.; CENTRAL NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CV-24-9368] |
| APPELLANTS | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| V. | |
| DANA WITKOWSKI, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ALMA GENNINGS, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF ALMA GENNINGS | |
| APPELLEE | |
| | REVERSED AND REMANDED |

**KENNETH S. HIXSON, Judge**

Appellants Sherwood Nursing & Rehabilitation Center, Inc.; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (collectively appellants or Sherwood) appeal from the Pulaski County Circuit Court's order denying their motion to compel arbitration in favor of appellee Dana Witkowski, as personal representative of the estate of Alma Gennings, and on behalf of the wrongful death beneficiaries of Alma Gennings (appellee or Ms. Witkowski). On appeal, appellants

generally contend that the circuit court erred in denying their motion to compel arbitration. We reverse and remand.

## I. *Relevant Facts*

On June 29, 2023, Alma Gennings was admitted to Sherwood Nursing & Rehabilitation Center. She did not sign any of the admission documents; instead, her daughter and attorney-in-fact, Ms. Witkowski, signed the documents necessary for Ms. Gennings's admission on June 28, 2023. Section 6 of the admission agreement included an arbitration agreement, and a separate signature section was included for the arbitration agreement. Section 6 stated the following in pertinent part:

> **EXECUTION OF THIS AGREEMENT BY THE RESIDENT OR THE RESIDENT'S RESPONSIBLE PARTY IS NOT A CONDITION OF ADMISSION TO, OR A REQUIREMENT TO CONTINUE RECEIVING CARE AT, THIS FACILITY. THE RESIDENT OR THE RESIDENT'S RESPONSIBLE PARTY HAS THE RIGHT TO REFUSE TO SIGN THIS AGREEMENT AND THE RESIDENT WILL STILL BE ADMITTED TO, OR CONTINUE RECEIVING CARE AT, THIS FACILITY.**
>
> This Arbitration Agreement (the "Agreement") is hereby entered between <u>Sherwood Nursing & Rehab</u> (the "Facility") and <u>Dana Witkowski</u> (the undersigned "Resident" or the Resident's "Responsible Party"), in conjunction with the Admission Agreement and operates as part thereof. The "Responsible Party" is the Resident's legal guardian, if one has been appointed, or the Resident's attorney-in-fact, if the Resident has executed a power of attorney. If the Resident does not have an appointed guardian, and has not execute a power of attorney, the "Responsible Party" is another individual or family member who agrees to assist the Facility in providing for the Resident's health, care and maintenance. The Responsible Party is acting on behalf of the Resident and binding the Resident to the terms of the Arbitration Agreement. . . .
>
> . . . .

THE PARTIES UNDERSTAND AND AGREE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AND ARE INSTEAD ACCEPTING THE USE OF ARBITRATION.

**By signing below, I acknowledge that I have read and understand the terms of this Arbitration Agreement, included as Section 6 of the Admission Agreement, have had its terms explained to me in a form and manner that I understand, including a language that I understand, and have had an opportunity to ask questions and to consult any person before signing, including an attorney. I am signing this Arbitration Agreement voluntarily and with full knowledge of its terms.**

(Emphasis in original.)

At the conclusion of the arbitration-agreement section, there were two options for signature. The signature block for the resident's signature was left blank. The signature block designating the "Responsible Party" was signed by Ms. Witkowski along with the notation "POA." A separate line below the signature block states: "Check here if Resident or Responsible Party declines to sign agreement." The box was not checked.

Ms. Gennings was a resident of the nursing home from approximately June 29, 2023, through August 18, 2023. Ms. Gennings was discharged to another facility and was later admitted to two different hospitals before she passed away on September 9, 2023. Ms. Witkowski was thereafter appointed as personal representative of Ms. Gennings's estate. Ms. Witkowski filed a complaint against appellants alleging multiple causes of action including ordinary negligence, medical negligence, breach of the admission agreement, and deceptive trade practices. Appellants filed answers generally denying liability and asked that the

3

complaint be dismissed. Appellants affirmatively pled that any "claims are barred from being litigated in a court of law by virtue of an Arbitration Agreement."

Appellants subsequently filed a motion to compel arbitration contending that the arbitration agreement encompassed the claims in Ms. Witkowski's complaint. Appellants argued that Ms. Witkowski had the authority to sign the admission and arbitration agreement on Ms. Gennings's behalf by virtue of a durable power of attorney executed by Ms. Gennings on June 29, 2004. Appellants attached to their motion a copy of the admission agreement, including the arbitration agreement, and the durable power of attorney signed by Ms. Gennings appointing Ms. Witkowski as her "attorney-in-fact" over her "claims and litigation."

Ms. Witkowski filed a response denying the enforceability of the arbitration agreement. Notably, Ms. Witkowski did not contest that she was her mother's attorney-in-fact or that she signed the arbitration agreement on her mother's behalf. Instead, her sole argument was that the arbitration agreement was unconscionable and therefore unenforceable. She provided the following explanation:

> Here, the Arbitration Agreement the Facility presented Ms. Witkowski was a form document within *another* form document that was within an *entire packet* of form documents. Ms. Witkowski had no ability to negotiate the Agreement's terms, and because the Facility presented the entire packet of paperwork to her at the same time, she had no way to fully comprehend what she was signing. While the Defendants may argue that Ms. Witkowski was able to rescind her assent to the Arbitration Agreement, upon information and belief, Ms. Witkowski never received a copy of the Admission paperwork and therefore had no ability to review or reconsider what she had signed. **Exh. A, ¶ 7**. Waiving a constitutionally protected right is a decision that is not to be taken lightly, and the portion of an agreement that outlines the terms of that waiver should not be lodged in the middle of a packet of paperwork that contains

4

an overwhelming amount of information on its own. Because Ms. Witkowski did not fully comprehend the terms of the Agreement and because of the procedural unconscionability of the Agreement itself, the Defendants' motion should be denied.

(Emphasis in original.) Ms. Witkowski attached her affidavit to her response. In it, she admitted that she had signed the arbitration agreement on her mother's behalf and that she was her mother's power of attorney at the time. However, she claimed that she did not understand "what arbitration meant at the time [she] signed the agreement" and that the facility did not explain that her signature meant that she "was waiving [her] mother's right to a jury trial[.]" Ms. Witkowski further claimed that if she had understood the agreement, she would not have signed it and that she did not receive a copy of the paperwork after she signed the documents.

Appellants filed a reply noting that Ms. Witkowski "concedes that she had the authority" to sign the agreement as "Ms. Genning[s]'s attorney-in-fact." They disagreed with Ms. Witkowski's defense that the arbitration agreement was unconscionable and therefore unenforceable. Citing several cases, appellants generally explained that Ms. Witkowski "presented no evidence that the circumstances surrounding the execution of the subject Arbitration Agreement were unconscionable or that the terms of the Arbitration Agreement are unreasonably favorable to [appellants]." Therefore, they alleged that Ms. Witkowski "failed to meet her burden to establish a defense to the enforcement of a valid contract, and the Arbitration Agreement must be enforced pursuant to its terms."

Without a hearing, the circuit court filed an order denying appellants' motion to compel arbitration on January 23, 2025. In its written order, the circuit court made the following findings:

> On this day came for consideration defendants' *Motion to Compel Arbitration* filed on December 4, 2024. The court finds that the *Motion to Compel Arbitration* is denied as a durable power of attorney, as opposed to a court ordered guardianship for incompetence, is not legally sufficient to waive the constitutional right to a jury trial.

> IT IS SO ORDERED.

(Emphasis in original.) This appeal followed.

## II. *Standard of Review*

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2025). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624. While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Progressive Eldercare Servs.-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

The Federal Arbitration Act (FAA) governs the agreement at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling

6

litigation and relieving docket congestion. *Id.* Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Phillips*, *supra*. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties and, (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. Even if a court finds that an arbitration agreement exists and that the dispute falls within the scope of the arbitration agreement, the court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, at 5, 434 S.W.3d 357, 360 (quoting Federal Arbitration Act, 9 U.S.C. § 2). Thus, contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. *Id.*

### III. *Analysis*

On appeal, appellants argue that the circuit court erred in denying their motion to compel arbitration on the basis that "a durable power of attorney, as opposed to a court ordered guardianship for incompetence, is not legally sufficient to waive the constitutional right to a jury trial." We agree.

7

When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with authority to bind the other person to arbitration. *Innisfree Health & Rehab, LLC v. Jordan*, 2020 Ark. App. 518; *Sherwood Nursing & Rehab. Ctr., Inc. v. Cazort*, 2022 Ark. App. 65, 642 S.W.3d 214. Here, appellants had the burden of proving an agency relationship, and it is undisputed that they met this burden. *See Jordan*, *supra*.

Ms. Witkowski admitted that she was Ms. Gennings's attorney-in-fact pursuant to a durable power of attorney and that she had signed the arbitration agreement in that capacity. Moreover, in her responsive brief on appeal, Ms. Witkowski concedes that she "did not argue that [she] lacked authority to enter the Agreement." Contrary to the circuit court's order, the legislature has specifically acknowledged that a power of attorney may grant an agent the authority to waive a jury trial and submit to arbitration. *See* Ark. Code Ann. § 28-68-212(5) (Repl. 2012) (currently in effect); Ark. Code Ann. § 28-68-412(5) (Repl. 2004) (in effect when Ms. Gennings's power of attorney was signed). At the time the power of attorney was signed, Arkansas Code Annotated section 28-68-412 provided that "[i]n a statutory power of attorney, the language with respect to claims and litigation empowers the agent to . . . (5) submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation[.]" Similarly, Arkansas Code Annotated section 28-68-212 now provides that "[u]nless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to claims and litigation authorizes the agent to: . . . (5) submit to alternative dispute resolution . . . ." Here, there was no language in the durable power of

attorney that would limit Ms. Witkowski's authority; instead, the durable power of attorney specifically granted Ms. Witkowski the authority to act "in any way that [Ms. Gennings] could lawfully act with respect to . . . claims and litigation." Moreover, this court has previously analyzed and upheld that a power of attorney may grant an agent sufficient authority to enter into an arbitration agreement. *See generally Heather Manor Care Ctr., Inc. v. Marshall*, 2024 Ark. App. 596, 704 S.W.3d 134. Therefore, we agree with appellants that the circuit court erred in finding that a durable power of attorney was insufficient to authorize Ms. Witkowski to sign the arbitration agreement on behalf of Ms. Gennings.[1] Accordingly, we reverse and remand for the circuit court to determine (1) the threshold issue of whether a valid agreement to arbitrate exists; (2) if a valid agreement exists, whether the dispute falls within the scope of the agreement; and (3) if (1) and (2) are present, whether applicable defenses, such as fraud, duress, or unconscionability, may be applied to invalidate the arbitration agreement. *See Salem Place Nursing & Rehab. Ctr., Inc.*, 2023 Ark. App. 237, at 12, 667 S.W.3d at 550; *see also Bank of the Ozarks, Inc.*, 2014 Ark. 223, 434 S.W.3d 357.

Reversed and remanded.

KLAPPENBACH, C.J., and GLADWIN, J., agree.

---

[1]Ms. Witkowski argues that we should nevertheless affirm because an appellate court may affirm a circuit court's order when it reaches the right decision, although it may have announced a different reason. She argues that the circuit court should have denied the motion to compel arbitration because the arbitration agreement was unconscionable and unenforceable. However, because the circuit court did not consider her arguments in its ruling, we decline to address them and instead reverse and remand for the circuit court to do so. *See Salem Place Nursing & Rehab. Ctr., Inc. v. Jefferson*, 2023 Ark. App. 237, 667 S.W.3d 543; *see also Bank of the Ozarks, Inc.*, 2014 Ark. 223, 434 S.W.3d 357.

9

*Hardin, Jesson & Terry, PLC*, by: *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Reddick Law, PLLC*, by: *Heather G. Zachary* and *Emily K. Towe*, for appellee.